PAUL B. SNYDER
Chief United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>JOSEPH STURTEVANT and<br>JULIE STURTEVANT,<br><br>                Debtors.| Case No. 10-45554 |
| LDV RIDGEWAY, LLC,<br><br>                Plaintiff,<br><br>   v.<br><br>JOSEPH STURTEVANT,<br><br>                Defendant. | Adversary No. 10-04328<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

Trial was held in this matter on September 19 and 20, 2011. LDV Ridgeway, LLC (Plaintiff), seeks to have the debt owed by Joseph Sturtevant (Debtor) declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and (a)(6).[1] The Plaintiff also seeks treble damages and attorney's fees pursuant to RCW 9A.82 or ORS 166.715. At the conclusion of the trial, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052.

**I**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Plaintiff is a limited liability company formed in the State of Oregon. In the spring and summer of 2006, the Debtor solicited prospective members to subscribe for membership interests in the Plaintiff. Investors were asked to subscribe for units in the Plaintiff at $50,000 per unit. The

---

[1]Unless otherwise indicated, all "Code," Chapter and Section references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended by BAPCPA, Pub. L. 109-8, 119 Stat. 23, as this case was filed after October 17, 2005, the effective date of most BAPCPA provisions.

MEMORANDUM DECISION - 1

Plaintiff has eight members, all except one of which resides in the State of Washington. Landmark Development Ventures, Inc. (Landmark) is a Washington corporation holding a 20% interest in the Plaintiff. The Plaintiff's Operating Agreement (Operating Agreement) entered into on June 1, 2006, provides that the Plaintiff would be manager-managed and that the managing member would be Landmark. The Debtor is the sole shareholder, director, and officer of Landmark.

Between June, 2006 and May, 2007, the Plaintiff's General Ledger (Ledger) indicates that the Debtor collected $1,000,000 dollars in subscriptions from the various members of the Plaintiff. Except for a subscription received from Walter Gintz (Gintz), the subscription amounts received from the members were deposited into an account maintained by the Plaintiff at a branch of Umpqua Bank located in Vancouver, Washington. The amount paid by Gintz was deposited into an account maintained by Landmark at Bay Bank located in Vancouver, Washington, and was never transferred to the Plaintiff's account at Umpqua Bank.

The Plaintiff is a member of Ridgeway Butte, LLC, which was formed to develop a project known as Ridgeway Butte in Lebanon, Oregon. The other members of Ridgeway Butte, LLC are Ridgeway Butte Investors, LLC, and Synergistic Land Developments, LLC (Synergistic). Rick Ely is the managing member of Synergistic. Ridgeway Butte Investors, LLC, was formed to loan money to Ridgeway Butte, LLC and receive a preferred return.

On June 5, 2006, the Plaintiff, Synergistic and Ridgeway Butte, LLC entered into a Development Services Agreement whereby the Plaintiff was engaged to manage the day-to-day affairs of Ridgeway Butte and perform other duties consistent with the development of Ridgeway Butte, LLC's real estate.

The Debtor, as the sole shareholder, director and officer of Landmark (Plaintiff's manager), wrote checks on the Plaintiff's account at Umpqua Bank and also maintained the accounting records for the Plaintiff.

The Debtor filed a voluntary petition for Chapter 7 relief on July 8, 2010. On October 15, 2010, the Plaintiff filed an adversary complaint against the Debtor, alleging that the Debtor converted

MEMORANDUM DECISION - 2

funds of the Plaintiff in an amount not less than $720,000, that his acts amounted to criminal profiteering pursuant to RCW 9A.82, and that the Debtor's obligation to the Plaintiff was nondischargeable under § 523(a)(2) and (a)(4).[2] The Plaintiff also sought treble damages and attorney's fees pursuant to RCW 9A.82.100. The Plaintiff filed an amended complaint on October 18, 2010.

On November 16, 2010, the Debtor, who is appearing *pro se*, moved to dismiss all claims against him. The motion was later withdrawn on December 3, 2010. The Debtor then filed a motion for summary judgment on December 6, 2010, in which he alleged, among other matters, that the Plaintiff had failed to satisfy the statute of limitations. The Plaintiff responded to the motion for summary judgment, filing a counter-motion for summary judgment. For a second time, the Debtor withdrew the motion for summary judgment. On January 3, 2011, the Debtor filed a third motion for summary judgment on the sole grounds that the statute of limitations barred the Plaintiff's claims.

On January 4, 2011, the Plaintiff filed its own motion for partial summary judgment requesting the Court rule that: (1) the Debtor converted no less than $1,282,652.62 from the Plaintiff; (2) the Plaintiff is entitled to relief under Washington's Criminal Profiteering Act; (3) any affirmative defense based on the statute of limitation should be stricken; and (4) the Debtor's obligation to the Plaintiff is nondischargeable. The Plaintiff's motion was heard on February 1, 2011. The Court entered an Order on Plaintiff's and Defendant's Motions for Summary Judgment. The Court granted partial summary judgment to the Plaintiff on the element of misappropriation as to the capital contribution of Gintz, check numbers 102, 103, 104, 105, 106, 110, 125, 146, and check number 108 in the amount of $85,000. The Court reserved the issue of the fraudulent circumstances element for trial, as well as the issue of misappropriation in regards to check numbers 101, 145, 147, and $15,000 of check number 108. The Court also reserved the issue of treble damages and attorney fees under the Criminal Profiteering Act.

---

[2] Plaintiff's counsel represented at trial that the Plaintiff is no longer pursuing relief under § 523(a)(2). This claim is therefore dismissed.

MEMORANDUM DECISION - 3

On July 11, 2011, the Debtor filed another motion for summary judgment alleging that the Plaintiff ratified the use of company funds by the Debtor. The Court denied the Debtor's motion finding that there was a genuine issue of material fact on the issue of the Plaintiff's alleged ratification.

A two-day trial was held in this matter on September 19 and 20, 2011.

### A. Motion in Limine

The Plaintiff filed a motion in limine to preclude the Debtor from testifying as to any matter or issue upon which he claimed a Fifth Amendment privilege against self-incrimination in the production of documents and at his deposition. A party may not claim the privilege against self-incrimination in discovery and then testify at trial concerning matters for which the privilege was claimed at deposition. Nationwide Life Ins. Co. v. Richards, 541 F.3d 903, 910 (9th Cir. 2008). At trial, the Court denied the Plaintiff's motion in limine without prejudice concluding that such objections must be raised as they arose during trial.

### B. 11 U.S.C. § 523(a)(4)

The Plaintiff alleges that the Debtor converted $1,232,650.60 of the Plaintiff's funds, consisting of 13 checks in the amount of $1,082.650.60[3] and $150,000 of the subscription amount paid by Gintz. According to the Plaintiff's complaint, such funds were embezzled by the Debtor and are thus nondischargeable under § 523(a)(4).

A debt is nondischargeable for embezzlement under § 523(a)(4) if the creditor can establish three elements: (1) property rightfully in the possession of a nonowner, (2) nonowner's appropriation of the property to a use other than which it was entrusted, and (3) circumstances indicating fraud. Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton), 942 F.2d 551, 555 (9th Cir. 1991).

---

[3] The Plaintiff's pleadings incorrectly state the total amount of the checks as $1,082,650.52.

MEMORANDUM DECISION - 4

The Court concluded in its oral ruling on summary judgment that the first element is met in this case. Thus, only the second and third elements are at issue. As managing member of the Plaintiff, it is undisputed that Landmark had the right to use the funds in Plaintiff's account for authorized purposes. Moreover, Article 5, paragraph 5.1, of the Operating Agreement specifically authorizes the Debtor, as President of Landmark, to expend funds for the Plaintiff as authorized. The issue then is whether the Debtor, acting for Landmark, appropriated the funds for unauthorized purposes under circumstances indicating fraud.

1. **Misappropriation of Property**

According to the Plaintiff, the Debtor was in possession of the Plaintiff's funds as managing member of the Plaintiff, but used such funds for purposes that were not in the ordinary course of the Plaintiff's business, that were unauthorized by the Plaintiff's Operating Agreement or by the other members.

On summary judgment, the Court ruled that misappropriation by the Debtor was established for checks numbered 102, 103, 104, 105, 106, 110, 125, 146, and for $85,000 of check number 108. The Court also found misappropriation for the capital contribution of Gintz. The Court determined that there was an issue of fact as to misappropriation regarding checks numbered 101, 145, 147 and $15,000 of check number 108. Check number 114 in the amount of $200,000 was not included in the Plaintiff's motion for summary judgment.

In regards to checks numbered 145, 147 and the $15,000 of check number 108, the issue is whether the Debtor misappropriated these sums or whether he was entitled to them as management fees. The Debtor claims that these payments were owed to Landmark as managing member of the Plaintiff and for services provided in connection with the Ridgeway Butte, LLC project, of which the Plaintiff was a member. Article 6.1 of the Plaintiff's Operating Agreement provides that "fees recognized by the Company as income for management, consulting and administration will be distributed directly to the Manager." Paragraph 6 of the Development Services Agreement between the Plaintiff and Ridgeway Butte, LLC provides that Ridgeway Butte, LLC was to pay the Plaintiff

MEMORANDUM DECISION - 5

$15,000 per month for one year, for a total of $180,000, as compensation for the services rendered by the Plaintiff under the agreement. Paragraph 6.1 of the Development Services Agreement also provides for reimbursement of all out-of-pocket expenses incurred by the Plaintiff or paid by the Plaintiff to third parties in connection with performing services under the agreement.

Check number 101 was paid in cash in the amount of $1,500, with a memo line in the Plaintiff's Ledger of "Personal-Earthwork's Cost." On summary judgment, the Court ruled that there was an issue of fact as to whether these funds were misappropriated. The Plaintiff failed to present any evidence regarding this check at trial, nor did the Plaintiff make any further argument regarding this check in its trial brief. As the burden is on the creditor to establish that the elements of § 523(a)(4) are met, the Court determines that the debt related to check number 101 is dischargeable.

The Debtor argues that there is no evidence of misappropriation regarding $15,000 of check number 108 because he was entitled to such funds as property management fees. The memo and split notation on the Ledger for this check reads, "Draw against investor equity for LDV Ridgeway; LDV Sandpines," and "Draws: Sturtevant." This check was made payable to the Debtor. Although the Development Services Agreement between Ridgeway Butte, LLC and the Plaintiff provided that the Plaintiff would receive payments of $15,000 per month for one year, for a total of $180,000, as compensation for services rendered and reimbursement of expenses, the Plaintiff's Ledger does not show that Ridgeway Butte, LLC ever paid any amount to the Plaintiff under the terms of this agreement. In addition, there is nothing in the Ledger to indicate that any part of check number 108 was paid as management fees. The Debtor provided no evidence at trial to demonstrate that any part of check number 108 is attributable to management fees. The only evidence before the Court is that $15,000 of check number 108 was taken as a draw by the Debtor. Although Article 6 of the Plaintiff's Operating Agreement allows for distributions, this is only to members in proportion to their ownership interest for payment of taxes and only in such amounts as the members determine. Thus, a preponderance of the evidence before the Court is that the Debtor's receipt of these funds was not

MEMORANDUM DECISION - 6

authorized. The Court concludes that the $15,000 of check number 108 still at issue was misappropriated.

According to the Debtor, check 145 in the amount of $37,055.68 and check number 147 in the amount of $89,694.32, was paid to Rick Ely and Synergistic for a share of past due project management fees for services provided to the Ridgeway Butte, LLC project. However, there is nothing in the record to indicate that such management fees were an obligation of the Plaintiff. Although the Development Services Agreement contains a provision for payment of management fees provided by the Plaintiff and reimbursement of expenses paid to third parties that performed services under that agreement, there is again no evidence that Ridgeway Butte, LLC ever paid the Plaintiff any amounts under this agreement. In addition, no credible evidence was presented to establish that such management services were actually provided. At trial, Ely testified that he had no documentary evidence to support such fees, such as a ledger or time record. Thus, there is little evidence before the Court that such fees were actually earned or a valid obligation of the Plaintiff. The Court concludes that based on a preponderance of the evidence, the above funds were misappropriated.

Check number 114 in the amount of $200,000 was paid to Northwest Property Development, a company operated by the Debtor, with a memo line of "Draw Against Investor equity for LDV Ridgeway," and split notation of "Draws: Sturtevant." At trial, the Debtor could not provide any explanation as to the purpose of such funds or why such funds were paid to the Debtor's company. There is no evidence that the membership approved these disbursements or that they were authorized under the parties' agreements. The Court concludes that such funds were misappropriated by the Debtor.

Accordingly, the Plaintiff has established misappropriation regarding all of the funds at issue with the exception of check number 101 in the amount of $1,500.

MEMORANDUM DECISION - 7

## 2. Circumstances Indicating Fraud

In order for these debts to be nondischargeable under § 523(a)(4), the Plaintiff must also establish circumstances indicating fraud. To establish circumstances indicating fraud, the Plaintiff must establish fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud. Teamsters Local 533 v. Schultz (In re Schultz), 46 B.R. 880, 889 (Bankr. D. Nev. 1985).

The Debtor argues that he did not have a fraudulent intent because his overriding goal was always to ensure that the project was a success. According to the Debtor, the debts at issue resulted from circumstances beyond his control, namely a declining real estate market. A belief in the eventual success of a project, however, is not necessarily a defense to an intentional and knowing misappropriation of funds. See, e.g., Boise Island Park, LLC v. Woodman (In re Woodman), 451 B.R. 31, 43-44 (Bankr. D. Idaho 2011) (intent to deprive the rightful owner of funds only temporarily does not negate the element of intent).

The Court finds the Plaintiff's witnesses particularly credible. The evidence before the Court establishes that the Debtor intended to deceive the other members of the Plaintiff in wrongfully taking the funds. For instance, checks numbered 102, 103, 104, 105, 106, 108, 110, 114, 125, 145, 146 and 147 were written out of Plaintiff's account for payment of expenses that were not obligations of the Plaintiff, that were not authorized by the Operating Agreement, and without the consent or knowledge of the other members of the Plaintiff. The uncontradicted evidence is that checks numbered 102, 103, 104 and 105 were payments for obligations associated with other projects in which the Debtor and/or Landmark was involved. The subscription paid by Gintz to purchase units of membership in the Plaintiff was never deposited by the Debtor into the Plaintiff's account. Without the other members' knowledge, these funds were instead deposited into a separate account maintained by Landmark at Bay Bank in Vancouver, Washington and never transferred to Plaintiff's account.

These acts were never disclosed to the members, who did not discover the acts that form the basis of their claim until they received a copy of the Plaintiff's Ledger in 2010. These facts help establish the Debtor's intent to misappropriate the Plaintiff's funds for his own purposes, and the Debtor has not presented any significant probative evidence to the contrary.

Such facts, therefore, distinguish this case from Littleton, where there was no evidence that the debtors used any of the corporate funds for their own benefit. Littleton, 942 F.2d at 555. In Littleton, unlike in the present case, there was also evidence that the creditor had knowledge and "acquiesce[d], at least to some extent, in the conduct of the debtors." In re Littleton, 106 B.R. 632, 639 (9th Cir. BAP 1989), aff'd, 942 F.2d 551 (9th Cir. 1991).

In this case, it is also appropriate to draw an adverse inference of circumstances indicating fraud from the Debtor's invocation of his Fifth Amendment privilege against self-incrimination. In civil proceedings, adverse inferences can be drawn from a party's invocation of a Fifth Amendment privilege when independent evidence exists of the fact to which the party refuses to answer. Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1264 (9th Cir. 2000). The burden is on the proponent of a fact to come forward with evidence to support the allegation, otherwise no negative inference will be permitted.

In the instant case, the Debtor pled his Fifth Amendment privilege in response to the Plaintiff's discovery requests and in response to most substantive questions asked at his deposition. These include all questions asked regarding the checks at issue, the purpose of such checks and whether the disbursements at issue were disclosed to the members. Accordingly, the Debtor claimed his Fifth Amendment privilege in response to any question relevant to the issue of whether circumstances indicating fraud exist in this case. As stated above, the Plaintiff submitted substantial independent evidence to establish this element. Although the Debtor did answer a few questions asked by the Plaintiff at trial and did introduce three declarations (Defendant's Exhibit No. 5 (in part), 6 and 7) in lieu of live testimony, no admissible evidence was introduced relevant to the fraud element. It is

therefore permissible for the Court to draw a negative inference of circumstances indicating fraud due to the Debtor's invocation of his Fifth Amendment privilege against self-incrimination.

For the reasons set forth above, the Court finds that the Plaintiff has established circumstances indicating fraud. This debt is nondischargeable under § 523(a)(4).

### C. 11 U.S.C. § 523(a)(6)

In its pre-trial brief, the Plaintiff asserts a claim under § 523(a)(6). This claim was not raised in the Plaintiff's complaint filed on October 15, 2010 or the amended complaint filed on October 18, 2010. At trial, the Court gave the Plaintiff an opportunity to file a supplemental brief as to whether it should be entitled to raise this claim. A supplemental brief was filed by the Plaintiff on September 23, 2011.

The Plaintiff argues that it should be allowed to pursue a claim under § 523(a)(6) in reliance on First Fed. Sav. Bank v. Gunn (In re Gunn), 111 B.R. 291 (9th Cir. BAP 1990), and Am. Honda Fin. Corp. v. Tester (In re Tester), 56 B.R. 208 (W.D. Va. 1985). In both of these cases, however, leave to amend was sought prior to trial. In Gunn leave to amend was sought two and a half months before trial and in Tester, more than 60 days after the complaint was filed but well prior to trial. In this case, relief under § 523(a)(6) was not sought until the filing of the Plaintiff's trial brief, and leave to amend was never formally sought. It was only at trial, after the issue was raised by the Court that the Plaintiff orally sought amendment to conform to the pleadings.

Although Fed. R. Civ. P. 15(b), made applicable to adversary proceedings by Fed. R. Bankr. P. 7015, provides a mechanism for seeking leave to amend pleadings during trial, it is within the Court's discretion to deny such request upon a finding that amendment would prejudice the Debtor. The Court is unwilling to grant leave to amend to add a claim under § 523(a)(6). A request to amend at this late stage does not provide the Debtor with a sufficient opportunity to respond nor to conduct additional discovery. Although the facts that comprise the § 523(a)(4) and § 523(a)(6) claims may be similar, the elements are not identical. The Court concludes that amendment at this late stage would

MEMORANDUM DECISION - 10

prejudice the Debtor and will not consider § 523(a)(6) as an alternative theory for declaring this debt nondischargeable.

### D. Standing

The Debtor argues that the Plaintiff lacks standing to pursue these claims because such actions were taken in violation of the Plaintiff's Operating Agreement. The Debtor argues that all acts taken by the Plaintiff are invalid because they were taken pursuant to an improper resolution. The Debtor's argument fails for two reasons.

Article 5 of the Plaintiff's Operating Agreement dated June 1, 2006, provides that the Plaintiff would be manager-managed, and vested management and control in Landmark. A corporate resolution dated June 21, 2010, revised the Operating Agreement to provide that the Plaintiff would be member-managed with any management decision requiring approval of 60% of the members. It is based on such resolution that the Plaintiff filed a proof of claim in the Debtor's bankruptcy case and initiated the current adversary proceeding.

The Debtor alleges that such resolution is invalid because Article 9 of the Operating Agreement provides that it can only be amended by unanimous agreement. However, this section also provides an alternative means for amendment. Article 9 further provides that the agreement can be amended by a meeting of members called for that purpose. The evidence indicates that a meeting of the members to vote on various resolutions, including the resolution at issue, was held on June 19, 2010. Thus, the evidence before the Court is that the June 21, 2010 resolution was a valid means for amending the Operating Agreement and that the Plaintiff has standing to pursue this action.

### E. Ratification

The Debtor argues that the Plaintiff waived its right to pursue this claim because it ratified the Debtor's actions in claiming the debt as a "bad debt" deduction on its 2009 federal income tax return. The Debtor has failed to provide the Court with any authority to establish that claiming a "bad debt" deduction on a tax return ratifies an embezzlement claim. Typically, the elements of ratification are:

MEMORANDUM DECISION - 11

(1) approval by act, word or conduct, (2) with full knowledge of the facts of the earlier act, and (3) with the intention of giving validity to the earlier act. See, e.g. Riss v. Angel, 131 Wn.2d 612, 636, 934 P.2d 669, 683 (1997). The Debtor failed to present any evidence to establish that these elements are met in this case. Rather, the undisputed and credible testimony of the Plaintiff's members (other than Landmark) was that they claimed the "bad debt" deduction solely because they were advised by their tax accountant to do so. There is absolutely no evidence in the record to indicate that this deduction was taken to give validity to the Debtor's acts that comprise the embezzlement claim with the requisite consent after full disclosure.

### F. Contributions

The Debtor also argues that he should be given credit for contributions he made to the Ridgeway Butte project. According to the unsubstantiated testimony of the Debtor, his "contributions" total over $4,000,000 and the Plaintiff can, therefore, not establish any net damages. The Debtor, however, has failed to provide any authority to indicate that a party can offset damages resulting from embezzlement with proof of contributions made.

Although the Debtor has not characterized it as such, the Debtor is essentially seeking to "offset" any damage award to the Plaintiff against amounts allegedly owed to him. Offset, however, is only allowed when there is a mutual debt. See § 553(a); In re Harrison, 2007 WL 7535080, at *9 (9th Cir. BAP March 29, 2007). A debt is only mutual if it is between the same individuals. In this case, the nondischargeability award is between the Plaintiff and the Debtor. There is no evidence before the Court that the unsubstantiated contributions allegedly made by the Debtor are a valid debt, provided a benefit to the Plaintiff, and most importantly, are a debt of the Plaintiff. Based upon the Debtor's allegations, it appears that the party that benefitted from any such contributions was Ridgeway Butte, LLC, not the Plaintiff.

In addition, the Debtor has not provided any admissible evidence of the benefits allegedly provided. Attachments to Debtor's exhibit 5, designated as 1-24, were deemed inadmissible by the Court at trial. In Debtor's declaration (Debtor's exhibit 5), the Debtor labeled these attachments as

MEMORANDUM DECISION - 12

"Proof of Contributions 1-32 to Ridgeway Butte Project." Attachments 1-23 are checks written on the account of Landmark and statements from Landmark's account at Bay Bank/Cowlitz Bank. Such checks/statements were not disclosed by the Debtor in his initial disclosures as required nor produced in response to a request for production of documents propounded by the Plaintiff. Attachment 24 is an Account Statement for account number 33697210. The entity that produced this statement is not listed on the document. The existence of this account was also never disclosed to the Plaintiff. Rather, in response to the request for production, the Debtor invoked his Fifth Amendment privilege against self-incrimination. As stated prior, a party may not claim the privilege against self-incrimination in discovery and then testify at trial concerning matters for with the privilege was claimed. Nationwide, 541 F.3d at 910. The Court therefore ruled that the Debtor could not introduce this evidence at trial, and as such, there is no evidence in the record to support the Debtor's claim that he is entitled to an offset against damages for contributions made.

### G. Criminal Profiteering Act

The Plaintiff also moves for relief under Washington's Criminal Profiteering Act. See RCW 9A.82.[4] Under the Washington Criminal Profiteering Act, a "person who sustains injury to his or her person, business, or property, by an act of criminal profiteering that is part of a pattern of criminal profiteering activity . . . may file an action in superior court for the recovery of damages and the costs of the suit, including reasonable investigative and attorney's fees." RCW 9A.82.100(1)(a). "Criminal profiteering" is defined by the statute as any act committed for financial gain that is chargeable or indictable under the laws of the state in which the act occurred and, or if the act occurred in a state other than this state, would be chargeable or indictable under this state's law. RCW 9A.82.010(4).

---

[4] During these proceedings an issue arose as to whether this claim should be analyzed under Washington or Oregon law. Although the statutes at issue are similar, including the elements and remedies, the Court concludes that the Washington Criminal Profiteering Act applies to this case. In a bankruptcy case, courts generally look to federal choice of law rules rather than those of the state where the petition was filed. Under federal law, the court looks to the state with the "most significant relationship." In re Mayer, 2011 WL 3299053, at *2-3 (9th Cir. BAP May 24, 2011). The state with the most significant relationship to this case is Washington. The Debtor resides and works in Washington. Landmark is a Washington corporation, and the bank account at issue is held at a Washington branch of Umpqua Bank. It is undisputed that all acts at issue occurred in the State of Washington.

MEMORANDUM DECISION - 13

The act must be one that is punishable as a felony and by imprisonment for more than one year, and the definition in the statute specifically includes theft. RCW 9A.82.010(4)(e). The standard of proof for plaintiffs filing suit under the Act is a preponderance of the evidence. RCW 9A.82.100(9) A "pattern of criminal profiteering" is established where the defendant commits at least three acts of criminal profiteering that are interrelated by distinguishing characteristics. At least one of the acts must take place after July 1, 1985, and the last act must occur within five years. RCW 9A.82.010(12).

The Court concludes that it does not have subject matter jurisdiction or constitutional authority to determine the Criminal Profiteering Act claim. This is a non-core claim that is based entirely on state law. 28 U.S.C. § 157(b). It is not related to the bankruptcy case because it could exist entirely apart from the bankruptcy proceeding and does not depend upon resolution of a substantial question of bankruptcy law. In addition, although the Court acknowledges that the remedies allowed by the Criminal Profiteering Act, including treble damages and attorney fees are civil, rather than criminal, in nature,[5] a predicate of liability under this Act is that a crime was committed. In this case, the Debtor has not been convicted of a crime. Although the Court understands that the Act does not require a party to have already been charged or indicted in order to establish liability,[6] in order for this Court to find that civil damages should be awarded pursuant to this statute, it would have to first determine that a crime meeting the definition of theft under Washington law had been committed. Such a determination is beyond this Court's jurisdiction. This conclusion is consistent with the United States Supreme Court's recent decision in Stern v. Marshall, 131 S. Ct. 2594 (2011), limiting this Court's constitutional authority to render a final judgment on state court matters.

If the Plaintiff chooses to pursue the Criminal Profiteering Act claim in state court, this Court agrees with the Plaintiff that any award granted by such tribunal for treble damages and attorney's

---

[5] See Winchester v. Stein, 135 Wn.2d 835, 852, 959 P.2d 1077, 1085 (1998).

[6] See RCW 9A.82.010(4).

MEMORANDUM DECISION - 14

fees is also nondischargeable under § 523(a)(4) in accordance with Cohen v. de la Cruz, 523 U.S. 213, 223, 118 S. Ct. 1212, 1219 (1998).

### H. Attorney's Fees

The Plaintiff argues that it is also entitled to recovery of its attorney's fees and costs pursuant to the terms of the Operating Agreement. Article 10, paragraph 10.3 of the Operating Agreement entitles the prevailing party to recover its reasonable attorney fees in any action "to declare or enforce any right created by this Agreement, or by reason of any breach of this Agreement." If Plaintiff intends to pursue recovery of attorney's fees under this provision, it may note the matter for hearing and additional argument.

## II

## CONCLUSION

The Court concludes that the Plaintiff has established that a debt in the amount of $1,231,150.60 is nondischargeable pursuant to § 523(a)(4).

*Paul B. Snyder*

Paul B. Snyder
Chief Bankruptcy Judge
(Dated as of Entered on Docket date above)

MEMORANDUM DECISION - 15